The case for argument is Bentrud v. Bowman, Heintz, Boscia & Vicia, Mr. Duff. If it pleases the court, my name is Robert Duff and I represent the plaintiff appellant Grant Bentrud. This case has been frustrating for Mr. Bentrud from the very beginning because the defendant law firm, rather than addressing plaintiff's claims head on, has spent all their time trying to reframe Mr. Bentrud's claims. For example, Mr. Bentrud's first claim is that it was unfair for the law firm to file a second summary judgment motion after Mr. Bentrud elected arbitration. The party's arbitration agreement very clearly and unambiguously states, if you or we elect arbitration of a claim, neither you nor we will have the right to pursue that claim in court. Yet this language appears nowhere in our police brief or any of their briefs before the district court. And in fact, not even the discussion of this language appears in any of their briefs. Instead, the law firm wants to talk about how filing the second summary judgment motion was consistent with the state court proceedings and rulings. But that's not Mr. Bentrud's claim. His claim is not that there was a violation of a court order or a court's imposed stay, and that's what made it unfair. Mr. Bentrud's claim is that it was unfair to file the second summary judgment motion because the party's agreement said neither party could pursue a claim in court once either party elected arbitration. What happened in the state court has very little, if any, relevance to that inquiry. The only way there could be deference to the state court on this issue is if the law firm had pled a preclusion doctrine or the Rooker-Feldman doctrine, for instance, and neither has been pled in this case. Absent such a defense, there's absolutely no basis to defer to a court ruling or the state court proceedings. It's no mystery why the law firm has not addressed this language. Proceeding in court after agreeing not to proceed in court would seem to be patently unfair. Well, they say you dragged your heels about the arbitration.  Well, the facts that are judged, we were, the court ordered us to arbitration. We believe that it made sense for Capital One to file the arbitration because they were the party with the claim, but the court ordered us to initiate the arbitration. We did initiate the arbitration with the AAA, American Arbitration Association, and they rejected it and said that we don't accept their arbitrations with Capital One because they haven't complied with our consumer-related rules in the past. And at that point, we felt like we had complied and had done what we were supposed to do. Say again what their excuse was that they, tell me again what the reason was. The American Arbitration Association, it was that in the past, not related to this particular claim, but in the past that Capital One had not complied with their essentially consumer rules. And so I have to admit, it's confusing to me anyway, Capital One is freestanding apart from any bank that may own that or may use that Capital One, Capital One is the bank. Correct, correct. And so, yeah, there was then a delay after we tried to initiate arbitration and Mr. Bintrude did not then try to file another arbitration with another potential arbitrator of which there was one other. One of the three had gone out of business by that time. But our position is that that's the state court proceedings and it really is not relevant to whether they were permitted to go ahead and file that summary judgment motion in proceeding court under the agreement because the agreement was very clear. Once there's an election of arbitration, it doesn't say once the arbitration is initiated or started or anything like that, there just simply has to be an election of arbitration. Once that happens, you cannot proceed in court. Mr. Bintrude clearly elected arbitration, there's no dispute about that, and yet they went ahead and proceeded in court. In doing so, we believe that they violated Section 1692F of the… Well, did they have to wait forever? Well, their remedy was to initiate the arbitration themselves. Well, what if they couldn't find anyone who wanted to arbitrate this matter? Well, I suppose then, you know, if literally they couldn't find anybody, they'd be out of luck. No. But they're bound by their agreement. This is an agreement that Capital One drafted. No, that's not reasonable. This is not an agreement that Mr. Bintrude drafted. It's one that they drafted. And I think as a practical matter, Judge, they would be able to find somebody. Even if the three named entities couldn't do an arbitration, they would be able to find somebody. But if literally they couldn't, our position would be that they wouldn't be able to pursue it. That doesn't make sense. Mr. Bintrude's next claim is that the law firm either attempted to collect too much interest or misrepresented the applicable interest rate. Critical here are four undisputed facts, which the law firm knew from the Well, I don't understand. Why are there the two different interest rates, the 10% and the 13%? I mean, the reason that we know now is because they cut off the variable part of the interest rate when they transferred it essentially to the law firm to file a lawsuit. What do you mean cut off? Well, the interest rate was comprised of What was the interest rate? Of the prime rate plus a certain percentage or margin that was disclosed. So what was it? Well, we know now that that margin was 10.65% and the prime rate was 3.25%. Those together comprise the 13.9%. So before the charge-off, the interest rate that Capital One was charging Mr. Bintrude and which went into the principal amount that Capital One was wanting collected was that margin, the 10.65% plus the prime rate. When they transferred it out to the law firm, they cut off that variable part, which the prime rate hadn't varied since late 2009 to the present, but I guess in an abundance of caution or whatever, because it could vary, they cut that off. But the problem with that is that they essentially didn't tell Mr. Bintrude, and it was disclosed to Mr. Bintrude that 10.65% is your interest rate. And so when that representation is made to him, that representation is false, and it's material to him because he can't then go back and calculate and see how much interest he owes. Those facts are undisputed in this case, that the interest rate was the prime rate plus that 10.65% margin that was disclosed to Mr. Bintrude. So what difference does it make? Well, again, it's material to Mr. Bintrude because he either, I mean, we've argued all along that it's hard to tell from the facts before the court, it's difficult to tell what the correct interest rate is. If the correct interest rate is 13.9%, then they have misrepresented the interest rate to Mr. Bintrude. If the correct interest rate is actually 10.65%, which they've told Mr. Bintrude it is, then they've attempted to collect too much interest in the principal balance, the capital one. Well, I don't understand. Neither interest rate is correct? Well, I mean, there's... What's your position? I don't understand. There's no evidence in the record, Judge. Well, what is it you want? Do you get more money if it's 13% rather than 10% or what? No, I mean, we want to prove that either they've attempted to collect too much interest or they've misrepresented the interest rate. Either tried to collect too much or tried to do what? They've either tried to collect too much interest if 10.65% is the real interest rate or if 13.9% is the real interest rate. They've misrepresented to Mr. Bintrude. Under the Fair Debt Collection Practice Act is what you're saying. Correct. It prevents a debt collector from attempting to collect, you know, even five cents more than is owed. And it also prevents a debt collector from making a mis... Are you saying both of the interest rates are impermissible? Well, there is nothing in the record to say what the actual interest rate, the correct interest rate is. I mean, we have two interest rates, but there's nothing to say that which one is correct from Mr. Bintrude's position. So what is the legal significance of that? What matters is that they've used two interest rates and both can't be correct. Yes, but if both can't be correct, the implication is one is. But you're saying neither is correct. I'm asking you, what is the legal consequence? How does that affect the lawsuit? Well, I mean, most likely the 13.9% is the correct interest rate. Well, why'd you say that? Well, because that's a reasonable inference. Well, I'm just told I've never heard anything so confusing. Do you understand how confusing you are? You talk about the two different interest rates and they're both wrong, but you don't tell me, so what? What is it you get out of it? What is it that Bertrand gets out of this? Well, I'm sorry. There are two interest rates that are wrong. One is wrong. What does it add up to? I apologize for not being clear, Judge. It frankly doesn't matter which one is correct. Well, why are we talking about them then? Because we have an FDCPA violation because there are two interest rates. What's important is there could not be two. There had to be one. There's no evidence, and that's what the district court relied on. There's no evidence that the interest rate was legally changed. Did he lose money because of this or what? No, I mean, it's an FDCPA violation. And therefore? He's looking for damages, isn't he? He's entitled to $1,000 statutory damages. That's all he's looking for? That's all he's looking for. Why is he suing for $1,000? That's the Fair Debt Collection Practices Act, Your Honor. Well, no. Why does anyone sue for $1,000? Does he have to pay a lawyer? I mean, $1,000 is important to some people. But you have to pay for a lawyer, don't you? If you recover under the FDCPA, you're also entitled to recover attorney fees as well. There's a fee-shifting provision in it. And what about the original debt? Did that have any impact on it, your lawsuit, on the amount? The original debt has been arbitrated. It went to one of the other arbitrators. So this is apart from that? It's completely separate, correct. It's been arbitrated, and we're waiting for a decision from the arbitrator. And did the state court set a date by which you had to seek arbitration? Yes, the state court did. And you tried to get it, and you were unsuccessful with regard to the AAA. Did that have any impact on a second arbitrator, the fact that you couldn't get or didn't get a second arbitrator? No. After they filed the second summary judgment motion, we went back to the state. Okay. So when did they file a second summary judgment motion? After the time it elapsed or before it elapsed? After the time it elapsed. We timely tried with the AAA. AAA rejected it the time that the court said. So they filed after the state court gave you so much time that you had to seek an arbitrator. You tried. You couldn't get it. The time lapsed. Then they filed their motion to dismiss. That's correct, Judge. And then there were additional pleadings and things filed in the state court, and the judge then ordered us to, again, initiate the arbitration with a different arbitrator. Is the two different interest rates, is that the only complaint you have about? Well, there is also, Judge, the issue with them filing the summary judgment motion after we elected arbitration. Essentially have two separate. That you regard as a violation of the Fair Debt Collection Practices Act? I do, Judge, because I think when it says when they agreed to not proceed in court after there's an election of arbitration. That sounds like a procedural irregularity. It doesn't sound like a debt collection fraud. Well, I mean, the agreement defines the debt and how they're enabled to collect it, and filing that motion was clearly not consistent with the fact that they could not proceed in court. So that's another $1,000? Is that the idea? No. Generally, the statute's been interpreted to only provide one statutory damage award, no matter how many violations there are. Okay. Well, thank you very much, Mr. Duff. Mr. Schultz? Good afternoon, Your Honors. My name is David Schultz. I represent the Appellee Counselor. I'd like to address briefly the motion, the interest, and if possible, our defense, bonafide area defense. As to the motion, just a little timeline to answer your question. The case was filed in January 2012. It was early in 2013 that the plaintiff asked to compel arbitration, and the trial judge entered an order, had three parts, and said, I'll grant you a motion. Plaintiff, you have 30 days until April 11th, I believe, 2013 to compel arbitration. And three, if that's not done, the stay that I'm granting is automatically dissolved. Okay. So they didn't get arbitration on, I believe, April 16th, 2013. They did seek it, but they couldn't get it. Correct. On April 16th, I believe, a few days after the deadline, they were told no. My client waited, waited another month, more than a month. Nothing was happening. So now my client, a lawyer, has a client who's a party in a lawsuit. Were they relieved of that deadline then? Was that your argument? Was the plaintiff relieved? I'm sorry. In other words, the court set a deadline by which they were to get arbitration. Right. That passed, right? Right. It did pass. So is that your argument is that it excused you, and you could then proceed back normally as you were in state court? Well, certainly that's what the circuit court judge's order said. It said that the stay is automatically dissolved. Right. And so we have a lawyer who's got an appearance on file before a judge regularly appears before, who's got a case that's now active, and a client that's a plaintiff in the lawsuit. They waited. They waited another five weeks or so, and they went back and refiled. Okay. So the question then becomes whether that is a fair debt filing. Is that an unconscionable act? And I don't believe it is. I don't see how that could rise to the level. Well, maybe I'm not stating it correctly. The judge gave the plaintiff a certain amount of time to seek arbitration pursuant to the agreement. Correct. They sought arbitration but failed to get it because AAA said they wouldn't do it. The time lapsed that the state court gave them to seek arbitration? Correct. Is that correct? Correct. That is correct. And then you go back in, once the time had lapsed, and file a second motion to dismiss. Five weeks later, we renewed the motion for summary judgment that was pending at the time. There was a summary judgment motion to collection case that was filed. Okay. Either renewed it or filed a new one. Yes. You made it active. In other words, you're seeking a motion. Yes, we did. Okay. So the question then becomes whether that's an unfair and unconscionable act, unfair debt act. And I just say that. What was the lawyer supposed to do? They represent their client. If they let the case get DWP, they'd be sued for malpractice. They've got a judge who's got a case on his docket that he said is now active and you have to move. The one case, you know, there's not a case directly on point, but I thought that your court, I'll call it the Beeler case, B-E-L-E-R, I might be mispronouncing that, is close. And in that case you said that you can't use the fair debt, the F unfair and unconscionable term to adjudicate disputes over state laws or how state court matters are handled. So I think that's pretty close. That's not what the Fair Debt Act is designed to do. What about the two interest rates? Okay, sure. It is actually in the record. It's a plan of summary judgment. It's docket item number 60. The attachments to that were, I think, 20 pages. And it's fairly clearly stated what that is in regards to the interest. He was on the first page of the statement. He was getting monthly statements until the May 2011 statement. He was getting monthly statements. And on the statement it says exactly what the interest rate is. It says it's the 13.9, which is the prime, which is 3.25, plus the other item, which was 10.65. That's stated in there. But also there was a notice in there that says you're seven months past due and things are changing now. And it told him that you're going to get quarterly statements. This is post-Dodd-Frank Act. So they're getting quarterly statements now. He's been charged off. And they're no longer going to charge past due, over the limit, membership fees, other things. This is in the record, his items, documents. It says we're not going to compound interest any longer and some other things. And so then he gets the quarterly statement three months later, August 15th for May, June, July, August, whatever is the 90 days. And on the front page it has the interest charge calculation, and it's gone down. They've taken off the prime, and it's now 10.65. And that's what he was told in the statements. It was clear what was going on. And the agreement that he actually attaches in there, too, says that Cap One can change the terms, including the rate. And that's what they did. And I'm not sure why there was a confusion on that or how that somehow rises to an unfair, unconscionable act, in particular for the lawyer. What did the lawyer get? And that's in the record, too. Again, his exhibits. In October of 2011, they've got the placement from the client, Cap One, a large financial institution that represents the interest at 10.65. They get an affidavit from their client that says, from this date on it's 10.65, from that date on. An affidavit. This is conduct consistent with what you, this court said, in the Jenkins v. Hyatt 1997 opinion on what law firms should be doing to ensure that they can file a suit to collect things. They were acting consistent with that law. And so that's the explanation for the interest. That's what the record showed. I don't think there's anything wrong with regards to collecting that. So I think we prevail on those facts. And if we don't, I don't believe it's an unfair, unconscionable act, and it certainly would seem to fall within my third argument, which is addressed in the briefs at the summary judgment level. It was also addressed before the trial judge here, which is that we have a bona fide error for this conduct. We did everything that's in that Jenkins v. Hines case. I think the last, just the last thing to point out is there's not, the Beller case is, like I said, an O'Rourke, because O'Rourke's another case from this court where he said, you're not going to have a fair debt case over a complaint that supposedly confused the judge. And Beller says that you're not going to use the fair debt act under unfair and unconscionable to question stuff that's happened in state court under following those rules. And the Supreme Court sort of addressed that in the Jenkins v. Hines 1994 opinion where they said, I'll just quote it. This wasn't in the brief, but I wanted to raise it. They said it was an E-5 claim, similar to this, that a lawyer supposedly, this is just the reason, it's not the holding, but they did say this. Thus, even if we were to assume that the suggested reading of E-5 is correct, we would not find the result absurd as to warrant implying an exemption for litigating lawyers. In any event, the assumption would seem unnecessary, for we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an action that cannot legally be taken. So they're recognizing, I think, that there are certain things that if a lawyer, a collection lawyer does, files, and it turns out maybe the 10.9 isn't right, it should have been some other number, that's not the facts here. It doesn't rise to the level of a fair debt violation in these pleadings. So clarity on that would be helpful, but we think that it's not unfair and unconscionable, and the evidence supports what it is they were doing. And that's all I had. Okay, well, thank you very much, Mr. Shultz. Mr. Duff, do you have anything further? Very briefly, Judge. Again, I think the focus as to the filing of the second summary judgment motion is on what happened in court. But from Plaintiff's perspective, the agreement between the parties overrides what happens in court. Again, there's no race judicata here, there's no controlling issue that the court has addressed. It's the agreement says you can't do this. And clearly, the FDCPA incorporates what an agreement says it does explicitly with regard to the amount of the debt and interest. Here, the agreement says... set a limit on the stay. He clearly was expecting that if the stay was exceeded, there would be another motion for summary judgment. Why else would he do that? I suppose, you know... Why else would he do that? Why else would he do that? Because he doesn't want to have a motion for summary judgment filed 10 years from now, right? He... I'm sure he did anticipate that if arbitration wasn't... There'd be a new motion for summary judgment so that the case moves along, doesn't sit around waiting for an arbitrator to appear. Correct. So I don't see why there's any impropriety in the defendant saying, okay, the stay is over, no arbitration is yet, I'll file my motion for summary judgment. Again, that's consistent with the court, but it's not consistent with the parties' agreement. Well, being consistent with the court is usually adequate for a litigant, right? You're told you can file your motion for summary judgment in 30 days or 60 days if there's no arbitration, so you do it. You don't say, well, that's what the court says. We have an agreement. We don't care what the court says. Well, there could be something that you do consistent with the court. That is still an FDCPA violation, and we believe that that was the case here. No. Obeying a court is an FDCPA violation? My time is up. Thank you. Okay, well, thank you very much to both counsel, and the court will be in recess. Thank you.